Case No. 12-15 Forrest v. Moylovich vs. City of Chicago If the lawyers who are going to be addressing the court, please, would you both step up and identify yourselves for the record? Good morning, Your Honors. This is Douglas McMeyer from the appellants, Mr. Henry Montesdeoca. Good morning, Your Honors. Jeff Garvin on behalf of the appellate board. I'm sorry, what is your name? Garvin, G-A-R-V-I-N. All right. Each side will have about 15 minutes, and from that you may save up some time for rebuttal. You may proceed. May it please the Court, Counsel. My name is Douglas McMeyer, and together with my colleagues at Hutch Blackwell, we represent the appellant in this case, Mr. Henry Montesdeoca. At this time, I'd like to reserve two minutes of my time for rebuttal. All right. My client is here because six years ago he called the police to report a crime that he witnessed being committed in his own neighborhood. He was then 20 years old and working his way through college to earn degrees in math and economics. We stand before this Court now six years after he made that phone call. He is about to graduate from Northeastern Illinois University with his degrees in math and economics. He has a bright future, but it continues to be clouded by the fact that he chose to become involved in the government and report a crime that he saw committed in his neighborhood. There are a number of items that are not in dispute. There is no dispute that a burglary took place on the evening of January 6, 2008. There is no dispute that Henry witnessed that burglary. There is no dispute that he called the police in response to the burglary that he saw. There is no dispute that the activities of contacting the police, being involved in the prosecution, and testifying at trial and identifying a potential perpetrator in the lineup are protected activities within the meaning of government participation under the app. But they picked the wrong guy. They identified the wrong person. Your Honor, that is the plaintiff's theory. That is not the theory that we would advance in trial. There was a not guilty finding. You're correct, Your Honor. There was a not guilty finding, but as Illinois case law specifically makes clear, a not guilty finding simply indicates that the state has not met its burden. It is not proof of actual innocence, and the case law is unequivocal on that point. In this situation, if this goes to trial, it will not be our position that the wrong person was picked. It will be that the right person was picked because Henry identified Mr. Smolovitch because Mr. Smolovitch was the man that he saw in the alley that night. The complaint is also substantially or solely based on Mr. Montesillo because of Henry's participation in government. In the briefs before you, Your Honors, we have gone through the complaint and identified every single activity that Henry is alleged to have engaged in the complaint, put it in a chart, and showed where it is in the Second Amendment complaint and how it directly correlates to participation in government. There is no dispute that there are no accusations made that do not directly relate to that. And there is also no dispute that Henry had no contractual relationship with, knowledge of, animus towards the plaintiff prior to this incident. There was no history between the parties at all. There is quite a substantial age difference, isn't there, between the deceased Smolovitch, if I'm pronouncing that correctly, I don't know, and the individual that was identified in the underlying criminal proceedings? Your Honor, I believe you're correct. I don't happen to know the exact ages of both parties off the top of my head. But that goes to one of the latter arguments, which is that this case must be considered against Henry as the individual movement. He is the only defendant in this case that is able to take advantage of the act. He is the only defendant in this case who has brought a motion under this act. But at the common law, there was really no such thing. If someone was charged maliciously, at least in their thought or thinking, they could file an action after a finding of not guilty against the parties or parties they felt responsible for the malicious prosecution, couldn't they? You're correct, Your Honor, and there's nothing in the interpretation of the act that's being advanced by Mr. Montestaioca that would change that analysis. There's nothing that says that the complaint still can't be brought. What exists is an affirmative defense, which is brought under Section 2619, which says that there is a statute which requires the moving party to accelerate the burden that they already have to prove their case and to bring before the court clear and convincing evidence to show that the case has merit and it should go forward without consideration of the rights and the position. How are we reviewing the complaint, though? It's a 2619. I mean, isn't it a 2619? It is a 2619. So how are we reviewing whether or not the defendant in this action, right? Correct. Came forth with clear and convincing evidence. It's not the defendant's burden to come forward with clear and convincing evidence. Correct. Well, the plaintiff has the opportunity to do that. So how do we review whether the plaintiff in a complaint? Because it's not actually the complaint that Your Honor would review. Under the terms of the statute, once the motion is made. Is made, then the plaintiff has the burden of showing by clear and convincing evidence that this wasn't simply a suit, you know, I don't, the key language I don't have on the tip of my tongue. It wasn't simply a suit that was related to or substantially based on the public participation. Yeah. And the answer to that is that under Section 20B of the statute, the plaintiff is allowed to conduct limited discovery. And, in fact, in this case, the plaintiff received the order saying that he could conduct discovery and the only discovery sought was the deposition of Mr. Montesdey of Henry. And he took that deposition and he had the opportunity in subsequent briefing to use the evidence that he generated in that deposition to show, to bring forth his clear and convincing evidence. There was subsequent briefing and it is attached in the record. How are we reviewing that? I'm asking how does the court of review? What's the standard of review for looking at whether or not that clear and convincing evidence was established? I see your question, Your Honor. The standard of review for whether or not there was clear and convincing evidence presented by the responding party, I believe, would be a de novo review in this situation because of the legal standards involved. In this case, there's no evidence whatsoever that the court actually conducted that analysis because, instead, the trial court reversed the burden under the statute and held that Henry, as the movement, had the burden of proving the case was meritless and retaliatory. And that's a burden that is not reflected in the statute and is not reflected in either Sandholm or Wright, which are the two only Supreme Court cases on this issue. And it's certainly contrary to the public policies of the Act. Well, aren't we interpreting the Act with the common law in mind? We are, Your Honor. And at the common law, wasn't that the standard, that it be meritless, or at least part of the standard? I'm not sure I follow your question. What was part of the standard? Well, what would be the standard we'd look at in reviewing what the Act means, if not the common law? It would be the common law, but you would look at the interpretation in Wright and Sandholm, with both cases still stand by the only Supreme Court. And if you read Wright and Sandholm in conjunction, it's very clear the Supreme Court did not intend to reverse the burdens and cause the plaintiff, excuse me, the movement, to prove meritless and retaliatory. If you look at, let's start with Wright. In Wright, the only Supreme Court. Well, what do you think the language is, or what the requirement is? What is the standard, then, if it's not meritless and retaliatory? What is it? The standard is the substantial basis test the Supreme Court articulated in Sandholm. And you see that laid out very clearly starting at paragraph 56 of the Sandholm decision. Yeah, and the substantial basis of what? Substantial basis that the entirety of the complaint is based on that participating activity. It's based on conduct with the government. And the issues in Sandholm, you had sort of a core nucleus. Yeah, so you don't think someone that feels they were wrongly convicted hasn't established by clear and convincing evidence that this wasn't simply participation in the government? There's no substance at all to that claim that someone might think they were maliciously prosecuted because? Well, the standard in the statute is that they have to present clear and convincing evidence. Whether they subjectively feel that they were wrong or not. Yeah, I'm using the wrong words, but clear and convincing. I mean, I think an individual who was prosecuted, charged, and then subsequently found not guilty, and there's certainly facts in the record that suggest that there's an enormous age differential, which you apparently don't recall what it is. But there was between the two different Somalavichs. And there's also information in the record about the police simply going to the wrong address or the registration. There was two separate registrations, weren't there? That's correct, Your Honor. Your Honor, as I understand the facts with regard to the city defendants, there was a Boris Somalavich that was registered to the vehicle. They went to the computer database that contains the vehicle registration, pulled the license plate information, then turned to a second database and inputted the name that they had gotten. And the second database was the database of criminal defendants, and they pulled the plaintiff's name from that database. And that was the origin of the Chicago Police Department's arguments. But that had nothing to do with my client or the party who was before the court today. Mr. Monticello Henry had no involvement in that. He had no knowledge of that. He had no authorization to do anything with that. The only thing that he did was call the police, report the crime, and then when the police asked him to come and do a lineup, do a photo op. Did the circuit court, though, make some particular findings about your client? I don't believe so, no, Your Honor. No. There was nothing that the circuit court reviewed in terms of at least the allegations that your client lied during the investigation and criminal trial? And didn't the circuit court review all of the evidentiary submissions and determine that your client had not met the additional burden required? Your Honor, the circuit court did review the materials that were submitted. There were no specific findings made either on the record. The transcript, I know for sure, is submitted as part of the record in this case. And there were no specific findings that were made in any order that was entered. I don't believe there was ever a finding that my client lied. In fact, I believe there's no evidence to suggest that. There is a theory, but there is no support for that whatsoever. The only finding that the trial court made was that my client didn't meet a burden which doesn't exist under law. The burden is not on my client to prove under some unknown standard that the case is meritless and retaliatory. In fact, if that were the legal hurdle that he had to accomplish. It's the plaintiff's burden. That's correct, Your Honor. But what is the burden? Didn't our court in Ryan say something different? Didn't our court in Ryan say that it was the movement's burden to show that it was a meritless suit? Your Honor, the court in Ryan did. In following Sano? The court in Ryan did make that determination, and I believe that determination was an error. That is a persuasive authority for this court. It is not a binding authority. The only two binding authorities are Sandholm and Wright, which do not hold that. And in the Ryan case, it doesn't actually go back and discuss the actual application of the statute that the Illinois Supreme Court used, starting at paragraph 56 of Sandholm. It uses language that appears much earlier in the Supreme Court's opinion about the reasoning and the logic behind the act. The Supreme Court in Sandholm never reverses that burden. In fact, in paragraph 56, when they actually start their substantive analysis, they don't mention the word meritless or retaliatory a single time. And the Supreme Court ends by saying that it stresses that it expresses no opinion on the merits of the case. Likewise, in Wright, where the Illinois Supreme Court held that the anti-SLAPP Act applied, the Supreme Court never once referenced meritless or retaliatory. The Supreme Court's entire analysis in Wright turns on whether the gravamen of the complaint was based on a public participation in government. Wright and Sandholm... The position would be the same with regard to Capehart also, then? That's correct, Your Honor. It would be. And in Capehart... But both of those cases were wrongly decided? Wrongly reasoned, yes. I think the outcome was probably correct in both cases, but I believe the reasoning was wrong. In Capehart, the court starts off absolutely correct. It lays out a three-part test. Where the court deviates from Sandholm and Wright, and from the absolutely unambiguous language of the statute, is with regard to the step two of the analysis, which the court considers a sidestep. And instead of resting on the actual language of the statute and the actual language of Sandholm and Wright about the substantial basis, it instead drafts this idea that in order to prove the substantial or sole basis, the plaintiff must also prove retaliatory and meritlessness. And that's an analysis the Illinois Supreme Court has never gone through. And there are other districts, including the third district, which have not gone through that analysis and reached the issue of the SLAPP cases. There were two counts in the complaint, right? Correct, Your Honor. What's the additional one besides the malicious prosecution? Conspiracy. And the object of the conspiracy was the malicious prosecution. And the allegations you're saying don't suggest that the gravamen of the complaint was based upon government participation? Exact opposite, Your Honor. I'm saying that the complaint, the entirety of the complaint, the gravamen of the complaint does. Right, right, right, right. And so if you look at some of the allegations in this conspiracy alone, it says that Montesdeo entered into an agreement, understanding, or accord with Gilbert Ortiz. That's his neighbor, but also the police officer. That's correct, Your Honor.  To identify plaintiff as one who attempted to burgle Ortiz's garage, he also acted in accordance with the unlawful agreement to identify Boris Smolovitch as one who had attempted to burgle the garage, assisted and encouraged the State's Attorney's Office to prosecute the plaintiff. I mean, there's quite a few allegations that could easily say that this is a conspiracy and that the gravamen of this is not his participation in government, but that a participation in a conspiracy. And Your Honor's characterization is correct, but I think that falls more into a 615 analysis than it does a 619 analysis. We're not disputing that the necessary boxes were checked to make out a claim. Well, the issue before this Court, and as directed by the Illinois Supreme Court and by the other- Well, you gave me the language. You're saying it's the gravamen of the complaint was based solely- Or substantially. Substantially on government participation. Correct. And again, look at Wright and Sandholm. In Wright, you have a situation where an individual was at a public meeting for an alderman, made public statements at that meeting, was then asked questions by a reporter, gave a statement to the reporter, had follow-up phone calls from the reporter, gave follow-up answers to the reporter. There were facts demonstrated in the record in Wright to show that statements made to that reporter and in the public hearing were factually wrong. And the Illinois Supreme Court still held that the act applied and the defendant was immunized under the act without ever touching the issue of meritless retaliation. The core of this issue is not whether or not the complaint is sufficient to make out the terms. The core of this issue is whether or not the allegations stem directly from. And I would again compare that to the Sandholm case. In Sandholm, you had a core issue of parents trying to petition a school board to remove a coach that they didn't like, that they thought was inappropriate. But their activities went far beyond a couple of public comments, sending a petition to the school board. They had an orchestrated campaign that the Supreme Court takes great pains to lay out in this decision. They were making public radio announcements. They were writing op-ed pieces. They were on radio shows. It was a whole campaign with some very inflammatory comments made about the individual. The case before your honors today is not a defamation case. It's a malicious prosecution case, which is already disfavored in law. It is a case where we are told every day, I saw it on the way over here, if you see something, say something. If we have a situation where an individual who does just that then spends six years tied up in litigation and faces $100,000 in taxes, $100,000 in damages, based solely on the fact that he called the police and the theory, the theory, which is unsupported by any evidence that he lied, that the acquittal equals innocence equals he must have lied, that is not sufficient. The plaintiff had the opportunity to conduct discovery. He conducted that discovery, and that discovery unambiguously shows that Henry did not enter into a conspiracy with anyone. No one indicated to him the correct person to pick in the lineup. Nobody even indicated to him that there was a correct answer in the lineup. Do you think there's a difference, substantial difference, between the evidence presented as far as the city? You know, I know they're not here in your client. I do think there's a substantial difference. Did you say that some dirt was thrown upon your client improperly, erroneously, or that they were considered together? I don't know if I want to go so far as to disparage my co-defendants saying they threw dirt on my client, but I will say that there is a very different position between the position of Henry, a private citizen, and the city of Chicago and the officers who are acting on behalf of the city of Chicago. They are very different individuals. There are very different facts that apply to them. There's very different standards and knowledge. The plaintiff's case is allowed to go forward against the city if my client is not involved in the case. All right. Anything further at this point? We'll allow you some time for rebuttal, certainly. Your Honor, if there are no further questions, I just reserve the rest of my time for rebuttal. May it please the Court, for the FOB, my client's intent in this case is only to seek redress for the wrong that was committed against him by the police officers and Mr. Montes D'Onovo. That's his sole goal, is to win this lawsuit. There is no ancillary goal. There's no intent to punish, and I believe Judge Brewer was convinced of that once she saw the submissions that I submitted with respect to the brief. The only evidence that the State's attorney had against my client with respect to this crime and the criminal trial was the oral testimony from these two individuals, Mr. Ortiz and Mr. Montes D'Onovo, linking him to the crime. And had they followed the proper procedures, this case never would have ended up in criminal trial. By the way, the difference in years between the two of them is not only one is dead and one is alive, but also it's about a 70-year difference. I mean, the guy was like in his late 70s or early 80s, if I recall correctly. So that's not a 70-year difference. Did you say 70? I mean, he was like 70 years old. He was at least 70, in his 70s, if not his 80s, at the time he was deceased. So when they picked up the guy's name from the car and they got the address, instead of checking that address that was registered to that Boris Simulovic, the owner of the car, what they did was, like they said, ran my client's name in the lead system, popped up his name and address, and then went out immediately to his address to arrest him for no other reason than that he appeared in the lead system. But can you really kind of pile all that on top of Mr. Montes D'Onovo? He doesn't have the resources or the obligations to conduct these investigations. I mean, maybe you can put that on the police, but can you put that on him? No, not at that stage, Your Honor. It's after he gets called in to identify the individual and then carries it through to the trial when they knew absolutely. What do you mean, they? Well, I believe that Mr. Montes D'Onovo participated in this with Mr. Ortiz. Well, what is there to support that? Well, he went to the police station with Mr. Ortiz. He was a longtime friend of Mr. Ortiz. He actually participated in a pretrial for some reason to decide whether they were going to allow a plea bargain or extend a plea bargain to my client. I have no idea why he was involved in that. Well, I mean, what does that suggest? That just suggests that was the procedure that the particular judge agreed to with all the parties there. No, actually, that took place in the state's attorney's office only with the police officers and the state's attorney. Well, you know, that's not unusual. Well, what I'm trying to get at is that I wasn't going to get – Do you think that in this case that there's a difference between the city and Mr. – I hesitate to mispronounce his name, the defendant. Any time that somebody participates, of course he had to go to the police station. It doesn't matter who his neighbor is. I mean, he made the call. He goes in. He participates in a lineup. And when there's a not guilty finding that they should be burdened with six years of litigation, a private citizen? He didn't make the call. He was present with Mr. Ortiz at the time. No, what I mean is that somebody participates in terms of the criminal justice system. They testify at trial. There's a not guilty. And since there's a not guilty, they should be subject to six years of litigation? If the evidence strongly suggests that – if they lie, yes. And you believe the record suggests that? Yes, absolutely. That you went forward with substantial evidence? Clear and convincing? Everything that I showed to Judge Brewer and her comments afterwards showed to Judge Brewer. What did you show Judge Brewer? I gave the criminal trial, if I recall correctly. I gave all the investigative material that had been submitted, the grand jury testimony. And when I say all the material submitted, I mean all the material out of the investigation itself, the questioning. So, fine, but you're giving me a mass of material. But what in that material would lead the court to conclude that this is nothing – that this is something other than a misidentification, which happens all the time? Well, it could have been a misidentification, except that three days after all this began to – three or four days or maybe within a week after the investigation, they discovered that there was this other Boris Semelovich, and that was the person who owned the car. And there was an individual, a member of that family, who came forth to indicate that the Boris Semelovich that they had for the crime was in no way related to the family. I mean, they never even knew he existed, and that he had never owned the car, and so there was no link. There was a substantial difference in age between the two of them. Yeah, and he was dead. I mean, there was no link between my client and the owner of that vehicle or his family. And there was an individual who came forward to tell the police. Now, Ortiz is a victim, right? No, no, Ortiz is a detective. Yeah, but weren't there police officers who were victims? Oh, he was a – yeah, he was a – It was his garage. That's what I mean. Right. He was a burglary victim. Right. And that's the link that you're talking about. You know, here, he's a burglary victim, and Montes de Yoke is a friend of his. Is that where you're going? Right. Yeah. And the only link to my client to the crime is the eyewitness testimony. When I say link, I mean the links of this conspiracy that you're relying on. Oh, I see. Okay. But the only link that my client had to this incident or this crime is from their testimony, is what I'm trying to say. I mean, it's circumstantial because I don't have admissions from any of these people that were involved, but my client couldn't have been involved. I mean, the guy's own – first of all, he wasn't that individual on the car, and the guy's own family member came forward to tell the police that they had the wrong guy. Whose family member? The old, deceased forest family. The deceased person? Yes. Oh, did they say that he was the one who burgled the apartment? No, they said he was not. They said he was not the owner of the vehicle, never had been the vehicle, but they don't know anything other than that. He wasn't the guy that the car – where the car had been. He wasn't ever an owner of the vehicle that had been involved in the collision. Let's talk about the burdens. Do you have a quarrel – let me save you from that. Yeah, do you have a quarrel with the appellant's presentation as to how the Sand Home sets out the relative burdens? Well, I do, sort of. I did see that three-pronged test in that case that was decided. I think it was about two or three days that it was filed before my brief, and it indicates that Reuben's burden is not a case that is meritless. I also know that the Supreme Court at Sand Home indicated or defined slapback suits as meritless. I mean, I think the phrase is slapback suits by definition are meritless. I believe later in that opinion they said that if – they were talking about the plaintiff's decision and he said, and I quote, in other words, if the plaintiff's intent in bringing suit is to recover damages for defamation in that case and not to stifle or chill defendant's right of petition, speech, association, petition, participation in government, it's not a slapback, we agree. There is not a slap. And I think in that subsequent case, I think it is their burden to show that this is not a case – it's their burden to show that this is a case where we are simply bringing this lawsuit for the purpose of retaliating and that it has no merit. In this particular case, Judge Brewer, and rightfully so, found that it was not a difficult decision for her to determine once she had my submissions that she was clearly convinced that this was not a meritless case. So, again, I don't think they've met their burden with respect to those first two prongs. And even if you think they did, Judge Brewer indicated no less than five or six times on the record after reading the submissions that I submitted was that she was clearly convinced that this case was not meritless, and she indicated, I believe, that she thought she would be doing a disservice to the state of Illinois law were she to grant that motion. I mean, the language that she used was pretty strong, and I think she was convinced, clearly. I don't have any further questions or statements. Anything further? No, thank you. All right, we'll hear a brief rebuttal. Your Honors, briefly, I believe there are a couple of points I'd like to make in rebuttal. First, to the extent the Illinois Supreme Court did talk about the slap cases are meritless, it's worth pointing out that there are several definitions used, both in the Sandholm opinion and in other sources cited by the Illinois Supreme Court that define what a slap is. Most of those definitions do not use the term meritless. Ultimately, though, when the Court did talk about meritless, it was talking about the ultimate determination. There was nothing in the Court's language that reversed the burden and put the burden on the plaintiff, or excuse me, on the movement at a very early stage to prove the lack of merit and the retaliatory nature of the case. Rather, the Court still followed the Section 15 in the plain language of the Act and ultimately determined that only those cases that get through the entire statutory framework and have not had the clear and convincing evidence presented are therefore subject to dismissal and those are the meritless cases. It is not sufficient to have a statement that there is a belief that something happened. There must actually be evidence on behalf of the responding party that is of a clear and convincing nature that the case should be allowed to go forward. That is the unambiguous language of the statute. The suggestion that was made that this couldn't be a misidentification case is because three to four days after the crime, it was discovered that there were two Boris Smolovitches. The identification of the plaintiff as the individual that my client saw in the alley happened the night of the crime. He was called to the police station around 10.30 or 11 o'clock that night. He did the photo array that night. He did the live lineup that night. The information that has been identified as they learned, meaning the City of Chicago defendants learned, happened three to four days after the identification. It has no bearing on the identification of the client. Yes, but what happened later at trial? My client... All of that information came out, didn't it? It did. And your client persisted in the identification of a dead person? No, my client persisted... Oh, I'm sorry. I keep confusing the two. That's fine. My client persisted in the identification of the plaintiff. His testimony has been consistent before trial. His testimony was consistent at trial, and his testimony was consistent at his deposition. There is no evidence... How do you explain this remarkable coincidence that this car is registered to somebody else who has the same name? Your Honor, I'm going to have to go outside the four corners of the record to answer that question because we haven't gotten to that point yet. But the bottom line is there were two gentlemen identified. Well, you know, it's interesting that you just said that. Yeah. Because you said, but we haven't gotten to that point yet. That may counsel against the early termination of litigation, so you can get to that point. And I understand Your Honor's point. The counterpoint to that would be that the defendant... excuse me... plaintiff was specifically granted the right to conduct discovery with relation to Henry Monasterio's motion. And that order is in the record. And the only discovery that the plaintiff sought was Henry's deposition. And we gave that deposition, and he didn't utilize that deposition for anything. He's never cited it. He's never referenced it. He got nothing out of it because, at the end of the day, the testimony is a testimony, and it's unequivocal, and there is zero evidence of a lie. Zero. Well, but you're saying, well, you know, they didn't do any additional discovery. But what's before the court, the trial court, was the fact that this car turns out to be registered to someone else with the very same name who's dead, and there's a substantial age difference. That was before the trial court. And that may be, is that enough for Judge Brewer to say, you know what? This isn't a meritless situation. You know, this isn't a lawsuit just to stifle someone's free speech. This is for damage to reputation. No, Your Honor, because that same situation could come up any time there was an acquittal. I mean, not with the exact fact pattern. Well, I don't think you're going to find too many cases like this one. You're right. And so the exact fact pattern will differentiate. Of course, we don't see those not guilties, but we're seeing one in the context of this case. Of course. But any time there's an acquittal, you're going to have a defendant who can point to something where they say, most of the time you might have a fruit of the poisonous tree type situation. But if there's an acquittal, you're going to have a situation where a defendant can point to something and say, well, look, the state's evidence was wrong because of this, or the identification was clearly wrong because the woman was looking through a screen and didn't have her glasses on, or whatever the case may be. There are going to be situations. Not like this one. That's not the same. This one is really very, very unusual. It is unusual in the sense that there is that. But there's a lot of evidence that would be developed if it went to trial. Again, a lot of evidence would be developed if the case were allowed to proceed further. And that's what's before this Court is, should the case have been allowed to proceed further. And I think the answer is no. The Supreme Court has dictated that this motion can be brought at any time. It is properly brought pursuant to Section 2619, not a 21005, Well, you and I are kind of running around in circles. Because what I'm saying is the trial court is faced with a situation where there is this remarkable coincidence about this car and this dead person with a huge age difference. And the trial court, at that stage of the proceedings, is faced with this, and the trial court comes to the conclusion, you know what, this is not a meritless situation. And you're saying, well, if it was allowed to proceed further, then we would find out this, that, and the other thing. But at the same time, you're saying, but the case shouldn't be allowed to proceed further. I mean, so, like, we could chase our tail all day long. But the fact of the matter is, should this case have been terminated this early? Then let me try to catch the chase. The statute requires the non-moving party, the responding party, to produce clear and convincing evidence. It is not sufficient under the statute that the plaintiff should Oh, only once you shift the burden. But the burden is shifted under the plain language of the statute and under the Supreme Court's application in both Wright and Sandholm. And I would encourage the court to look, starting at paragraph 56 of Sandholm, where the court actually does the application. That burden is shifted once the plaintiff is able to show that the, excuse me, the defendant is able to show that the case is based substantially or solely on the petitioning activity. And cases, you know, cases, for instance, where the court has found properly that there is, that the cases outside the petitioning activity are cases where there's a long contractual history. There was a case where there was a dentist's office and there had been a long employment history and there were complaints in front of the Illinois Department of Human Rights and all kinds of things that related to a counterclaim that was brought in litigation. Those are things that take a case outside of strictly petitioning activities, taking a case strictly outside of the government conduct. Let me say this. Let's get to their language in 56 and 57. Okay. What purpose would, why would the plaintiff have a motivation, now that that case is over and there's been a finding not guilty, what motivation would the plaintiff have to continue on to litigate, to chill the further participation in government, or stifle the political expression of Mr. Montesquieu? Because that's the burden. So, I mean, why would the plaintiff have any concern or interest in stifling Mr. Montesquieu any further, as opposed to just wanting to get some damages? If he wants to get some damages, then it's not a slap. Understanding your Honor's position, though I disagree with the legal interpretation, the statute doesn't simply address the chilling or the stifling of public participation. It also specifically encompasses the punishment of individuals who did participate in government. That is also specifically covered by the Act. It has not gotten a lot of attention, in fact I believe it has gotten no attention in the case law. But in this situation, the statute also specifically allows for that. It specifically calls for people to be protected from being punished for having participated in government. In that case situation, that's exactly the situation. The plaintiff wants to get money, he wants to punish, he's angry about what happened to him, he wants Mr. Montesquieu to pay. He wants Henry to pay for what he thinks was wrong to him. That is not a fair basis to bring a case under the Act. Anything further? Your Honor, if there are no further questions, I would respectfully submit the case for consideration. All right. The case was well argued and well briefed, and we will take it under advisement. Thank you both.